IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § § § |
| v. | § § Case No. 3:04-CR-240-G § |
| HOLY LAND FOUNDATION FOR RELIEF AND DEVELOPMENT, ET AL. | § § § |

## NON-PARTY STEVE MCGONIGLE'S BRIEF IN SUPPORT OF MOTION TO QUASH TRIAL SUBPOENA, OR ALTERNATIVELY, LIMIT THE SCOPE OF EXAMINATION

### I.
### PRELIMINARY STATEMENT

Non-party Steve McGonigle ("McGonigle") moves to quash the trial subpoena served on him by the United States Government, or alternatively, for an order limiting the scope of the testimony that he may be required to give in this case. McGonigle is a long-time professional journalist with *The Dallas Morning News* ("*The News*"). He wrote articles published in June 2000 for *The News* concerning the Holy Land Foundation ("HLF").

In this case, the Government apparently seeks testimony from McGonigle about events relating to his interview in December 1999 with the late Sheikh Ahmad Yassin, one of the co-founders of Hamas, who was quoted in one of his articles. The Government may also want to examine McGonigle at trial regarding a writing allegedly prepared by a Gaza journalist who had worked on a free-lance basis with another Western news organization regarding the circumstances of McGonigle's interview with Sheikh Yassin.

The Government's subpoena should be quashed because the testimony it seeks from McGonigle is irrelevant and has no material bearing on the Government's charges. Specifically, McGonigle has no personal knowledge of any of the events charged in the Superseding

NON-PARTY STEVE MCGONIGLE'S BRIEF IN SUPPORT OF MOTION TO QUASH TRIAL
SUBPOENA, OR ALTERNATIVELY, LIMIT THE SCOPE OF EXAMINATION – PAGE 1

Indictment, as modified by the Court's December 8, 2006 Order, and was not an eye witness to any such events. McGonigle further moves to quash the Government's subpoena on the basis of hearsay, the reporters' privilege, and because requiring his testimony in this case could potentially compromise his personal safety.

Alternatively, if McGonigle is compelled to testify, the scope of examination should be strictly limited to his authentication of Sheikh Yassin's quoted statements. The sole issue on which testimony should be elicited from McGonigle would be to verify that the quotations in the article are accurate as reported.

## II.
## BACKGROUND

McGonigle was served with a trial subpoena by the Government dated April 3, 2007. (App. at 3-4).[1] Counsel for McGonigle accepted service of the subpoena by agreement on April 11, 2007, but expressly reserved the right to file a motion to quash. (App. at 5). The subpoena does not list any topics of examination. (App. at 3). Based on communications with the Government, however, the Government apparently seeks to examine McGonigle about his interview in December 1999 with the late Sheikh Ahmad Yassin, one of the co-founders of Hamas.

McGonigle's interview with Sheikh Yassin in December 1999, and other newsgathering activities, resulted in two articles that *The News* published on June 11, 2000. (App. at 6-7 – McGonigle Dec. ¶¶ 3-5). One article was entitled *"Fostering Unrest or Helping the Poor? Public Records show a case open to debate."* (App. at 15-19). The other article was entitled *"Fostering Unrest or Helping the Poor?; Richardson-based Holy Land Foundation aids*

---

[1] An Appendix to the Brief in Support is being filed concurrently herewith.

NON-PARTY STEVE MCGONIGLE'S BRIEF IN SUPPORT OF MOTION TO QUASH TRIAL SUBPOENA, OR ALTERNATIVELY, LIMIT THE SCOPE OF EXAMINATION – PAGE 2

*Palestinians in need, including families of slain, exiled members of Hamas*" and quotes from the Yassin interview as follows:

> "We have no relations with [the Holy Land Foundation], such foundation," said Sheikh Ahmad Yassin, a charismatic teacher who co-founded Hamas in 1987. "I've never heard they supported financially any project, any Islamic project for Hamas." Sheikh Yassin joked to a reporter who visited his home in Gaza City that perhaps he should become familiar with the foundation. "I wish you can recommend us to them to give us some money," Sheikh Yassin said. "Now that I'm building a school its a good idea to send them an application to support us."

(App. at 10-11).

As the article shows, Sheikh Yassin stated that the HLF provided no funding to Hamas. (App. at 7 – McGonigle Dec. ¶ 4). Further, he made no statements implicating any defendant in any of the actions charged in the Superseding Indictment. (*Id.*). The other June 11 article expressly refers to a "senior Israeli government official" who "spoke on the condition of anonymity." (App. at 7 – McGonigle Dec. ¶ 5; App. at 19). The statements attributed in the article to the "Israeli officer" provide comments on the U.S. Government's reluctance in the late 1990s to act too close to the HLF. (App. at 7 – McGonigle Dec. ¶ 5). A Gaza journalist assisted with the arrangements for McGonigle's interview with Sheikh Yassin and acted as an intermediary between McGonigle and Yassin. (App. at 7-8 – McGonigle Dec. ¶ 6).

### III.
### THE SUBPOENA SHOULD BE QUASHED

A.  **The Testimony the Government Seeks is Irrelevant to any Issue in this Case.**

All evidence offered at trial is subject to a threshold test of relevancy. "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence." Fed. R. Evid. 401. "All relevant evidence is admissible...[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402.

A federal district court may grant a motion to quash a trial subpoena in a criminal case on the basis of relevancy. *See, e.g., U.S. v. Oberle*, 136 F.3d 1414, 1420 (10th Cir. 1998) (trial subpoena served on probation officer quashed, among other reasons, because testimony only of "marginal relevance"); *U.S. v. Klubock*, 639 F. Supp. 117, 123 (D. Mass. 1986) (noting that "courts have repeatedly, when the interests of justice have so warranted, heard and granted (and denied) motions to quash subpoenas to compel testimony" in criminal cases); *see also U.S. v. North*, 910 F.2d 843, 892 (D.C. Cir. 1990) (trial subpoena served on former President Reagan quashed because there was "no indication that Mr. Reagan would have provided evidence material or favorable to North with respect to [the] counts in [the] indictment"), *withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990).

Federal district courts, moreover, have not hesitated to grant motions to quash in analogous circumstances under Federal Rule of Criminal Procedure 17(c), which governs the issuance of subpoenas duces tecum in federal criminal cases. For example, the United States District Court for the District of Connecticut recently quashed a subpoena duces tecum served under Rule 17(c) on two non-parties because the defendant failed to establish that the documents he sought were relevant. *U.S. v. Forbes*, Criminal No. 3:02CR00264, at *2 (D. Conn. Nov. 1, 2005) (Loislaw.com, Fed. Case Law). Similarly, in *United States v. Ail*, No. CR 05-325-RE, 2007 WL 1229415, at*6 (D. Or. April 24, 2007), the United States District Court for the District of Oregon recently quashed subpoenas duces tecum served by the defense on non-parties under Rule 17(c) because the defendants failed to demonstrate that the records were relevant to any issue before the court. Likewise, the United Stated District Court for the Northern District of

New York recently quashed subpoenas duces tecum served on non-parties in a criminal proceeding because the documents sought were irrelevant and beyond the scope of the indictment. *U.S. v. Salvagno*, 267 F. Supp.2d 249, 253-254 (N.D. N.Y. 2003).

In this case, the Court should quash the subpoena because it seeks irrelevant and immaterial testimony. Specifically, McGonigle was not an eye witness to any events or overt acts alleged in the Superseding Indictment and has no personal knowledge of any such events. (App. at 6 – McGonigle Dec. ¶ 2). Likewise, McGonigle has no personal knowledge of any written account related to his interview of Sheikh Yassin prepared by the Gaza journalist. (App. at 6-7 – McGonigle Dec. ¶ 6). For these reasons, McGonigle's testimony would not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

Alternatively, even if McGonigle's testimony has any marginal relevance, it should be excluded under Federal Rule of Evidence 403 because its "probative value [would be] substantially outweighed by the danger of unfair prejudice." Clearly, any statements made by Sheikh Yassin—a non-party—to McGonigle would be unfairly prejudicial to the extent they would confuse the issues before the Court or bring in information about Hamas beyond the scope of the Superseding Indictment. *See, e.g., U.S. v. Simkanin*, 420 F.3d 397, 412 (5th Cir. 2005) (affirming trial court's exclusion of documents under Rule 403 because they were potentially confusing); *Hicks v. Mickelson*, 835 F.2d 721, 726 (8th 1987) (exclusion under Rule 403 was appropriate because evidence would have caused "the jury to lose sight" of the main issue).

To summarize, McGonigle lacks personal knowledge of any actions charged in the Superseding Indictment and was not an eye witness to any such events. The Court should therefore quash the subpoena on the basis of relevancy.

B.  **The Testimony the Government Seeks is Inadmissible Hearsay.**

The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or the hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Here, any statements made by Sheikh Yassin—a non-party—to McGonigle, whether quoted in McGonigle's article or not, are inadmissible hearsay if offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). It is well-established, moreover, that the articles themselves are inadmissible hearsay. *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (describing newspaper articles as "classic, inadmissible hearsay"). Likewise, any statements made by the Gaza journalist—also a non-party—to McGonigle are inadmissible hearsay. In brief, the Court should quash the subpoena, at least to the extent it seeks inadmissible hearsay testimony from McGonigle regarding any statements made by Sheikh Yassin or any other non-party.

C.  **The Testimony the Government Seeks, At Least in Part, is Constitutionally Protected by the Reporters' Privilege or a Common Law Reporters' Privilege.**

The Fifth Circuit has recognized a qualified reporters' privilege under the First Amendment which protects the media from the forced disclosure of confidential sources. *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, 725-26 (5th Cir.) (citing *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972)), *modified on reh'g*, 628 F.2d 932 (5th Cir. 1980) (per curiam); *see also Price v. Time, Inc.*, 416 F.3d 1327, 1343 (11th Cir. 2005) ("[The Fifth Circuit] has held that 'a reporter has a First Amendment privilege which protects the refusal to disclose the identity of confidential informants.'").

In *Miller*, a civil case, the Fifth Circuit established that to defeat this privilege, the discoverer must show that: (1) the information is relevant; (2) it cannot be obtained by alternative means, and (3) there is a compelling interest in the information. *Miller*, 621 F.2d at

726; *U.S. v. Smith*, 135 F.3d 963, 971 (5th Cir. 1998) (citing *Miller*). The Fifth Circuit, however, has precluded the application of the qualified First Amendment reporters' privilege in the context of a prosecution subpoena seeking *non-confidential* source information in grand jury proceedings and criminal trials. *Smith*, 135 F.3d at 972 ("News reporters enjoy no qualified privilege not to disclose non-confidential information in criminal cases.").

This case is distinguishable from *Smith*. Here, the second June 11 article expressly refers to a "senior Israeli government official" who "spoke on the condition of anonymity." (App. at 19). The statements attributed in the article to the "Israeli officer" provide comments on the U.S. government's reluctance in the late 1990s to act too close to the HLF. These statements are irrelevant and immaterial to any acts charged in the Superseding Indictment. Further, they expressly involve a confidential source and thus, unlike the non-confidential information at issue in *Smith*, support the application of a reporters' privilege, at least in part. Thus, this motion presents an issue of first impression for courts within this Circuit—whether the reporters' privilege protects *confidential* source information when a reporter has been subpoenaed to testify in a criminal case.

To the extent that the information sought by the Government here would force McGonigle to disclose a *confidential* source or information provided in confidence by the source, this Court should apply the three-part test set forth in *Miller*. When that test is applied, the reporters' privilege protects McGonigle from testifying about the identity of his confidential source or any information provided in confidence by that source. First, the identity of the source and any information provided in confidence by that source are irrelevant and immaterial to any acts charged in the indictment. Second, the Government cannot show that the information cannot be obtained by alternative means. Third, the Government cannot show that there is a

compelling interest in the identity of McGonigle's confidential source or information provided in confidence by that source.

Alternatively, the qualified privilege for a journalist to refuse to disclose a confidential source of information asserted herein by McGonigle has its foundation in federal common law that has arisen under Federal Rule of Evidence 501. *See New York Times Co. v. Gonzales*, 459 F.3d 160, 181 (2d. Cir. 2006) (Sack, J. dissenting). In the years since *Branzburg v. Hayes*, 408 U.S. 665 (1972), courts and legislators overwhelmingly have recognized the protection of reporters from compelled disclosure of sources. Forty-nine states and the District of Columbia accord reporters some protection for confidential sources. *Gonzales*, 459 F.3d at 181 n.7. "[I]t can no longer be controversial that to perform their critical function, journalists must be able to maintain the confidentiality of sources who seek so to be treated realiably, if not absolutely in each and every case." *Id*. at 181.

In sum, for these reasons, the Court should quash the subpoena, at least to the extent it would subject McGonigle to direct or cross-examination about the identity of his confidential source or any information provided in confidence by the source.

D.  **The Testimony the Government Seeks Will Necessarily Increase the Risk to McGonigle's Personal Safety and Result in Less News Being Available to Report to U.S. Readers.**

Testimony by McGonigle at trial in this case may give rise to security concerns not present in other cases. (App. at 8). Western reporters covering terrorism already face grave dangers in the field that are not encountered by other journalists. Reporting from the Middle East, especially conducting interviews with militants, Jihadists, and persons who express Islamic-based religious differences with the United States or Israeli governments can be extremely dangerous, if not fatal. (App. at 8 – McGonigle Dec. ¶ 7); *see also "Iraq: Journalists*

*in Danger; Journalists Abducted Since 2004,*" Committee to Protect Journalists, available at http://www.(cpj).org/Briefings/Iraq/Iraq_adbucted.html.

Western journalists have become increasingly identified with their governments and their militaries by militants in this post-9/11 world. Terrorists who view reporters as agents of a government or as potential prosecution witnesses pose a threat to the safety of those reporters. A journalist who is perceived to have acted as an agent for the U.S. Government will almost inevitably be placed at a substantially greater risk when on assignment in the Middle East. This problem is particularly acute after a journalist has testified on behalf of the government—even under subpoena—because such testimony is easily construed as support for the Government's policies. Finally, to avoid this increased risk to McGonigle, news organizations such as *The News* may decide not to send him on future assignments to the Middle East, which may result in less news being available to report to U.S. readers. In sum, requiring McGonigle's testimony will necessarily increase the risk to his personal safety and result in less news being available to report to U.S. readers.

## IV.
## AT A MINIMUM, THE COURT SHOULD ENTER AN ORDER LIMITING MCGONIGLE'S TESTIMONY TO THE AUTHENTICITY OF THE QUOTATIONS

Trial judges retain wide latitude to impose reasonable limits on trial examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant. *Moten v. Cockrell*, No. 4:02-CV-532-A, 2002 WL 32714553, at *3 (N.D. Tex. 2002) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

In this case, if Mr. McGonigle is compelled to testify, the scope of examination should be strictly limited to his authentication of Sheikh Yassin's quoted statements. The sole issue on which testimony should be elicited would be to verify that the quotations of Yassin in the articles

are accurate as reported. Confidential source information or unpublished information, such as the circumstances in which the statements were made to McGonigle, other quotations he chose not to include in the published material, the nature of any investigation he undertook while writing the article, writings or accounts of third persons related to McGonigle's interview of Sheikh Yassin, and how he achieved access to Yassin, are irrelevant to any factual determination of whether the statements quoted were in fact made.

This approach was recently taken by the United States District Court for the Eastern District of Pennsylvania in *In re Maykuth*, No. 05-0228, 2006 WL 724241 (E.D. Pa. Mar. 17, 2006). In that case, a defendant accused of civil rights violations served a subpoena on a reporter for the *Philadelphia Inquirer* seeking testimony verifying various statements the reporter attributed the plaintiffs in an article. *Id.* at *1. While the Court declined to quash the subpoena, the Court agreed that the scope of the reporter's examination was properly limited to whether the plaintiffs made the quoted statements. *Id.* at *3. This Court should do likewise.

## V.
## PRAYER

WHEREFORE, Non-party Movant Steve McGonigle prays that the Court quash the Government's trial subpoena, or alternatively, order that the testimony that McMonigle may be required to give in this case be strictly limited to the authentication of the Sheikh Yassin's quoted statements.

Dated: May 31, 2007.

                              Respectfully submitted,

                              /s/ Paul C. Watler
                              Paul C. Watler
                              State Bar No. 20931600
                              Andrew D. Graham
                              State Bar No. 24041002

                              JACKSON WALKER L.L.P.
                              901 Main Street, Suite 6000
                              Dallas, Texas 75202
                              Telephone: (214) 953-6000
                              Telecopier: (214) 953-5822

                              ATTORNEYS FOR STEVE MCGONIGLE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all counsel of record via electronic service and/or certified mail, return receipt requested, as set forth below, on this 31st day of May 2007:

| | |
|---|---|
| James T. Jacks<br>First Assistant United States Attorney<br>U.S. Department of Justice<br>Northern District of Texas<br>1100 Commerce Street, 3rd Floor<br>Dallas, Texas 75242-1699 | Nancy Hollander<br>Freedman Boyd Daniels Hollander<br>Goldbert & Ives PA<br>20 First Plaza, Suite 700<br>Albuquerque, New Mexico 87102 |
| Joshua L. Dratel<br>Law Office of Joshua L. Dratel<br>14 Wall St, 28th Floor<br>New York, New York 10005 | Linda Moreno<br>Law Office of Linda Moreno<br>P.O. Box 10985<br>Tampa, Florida 33679 |
| Marlo P. Cadeddu<br>Law Office of Marlo P. Cadeddu<br>3232 McKinney Ave, Suite 700<br>Dallas, Texas 75204 | Greg Westfall<br>Westfall Platt & Cutrer<br>Mallick Tower<br>One Summit Ave, Suite 910<br>Fort Worth, Texas 76102 |

                              /s/ Paul C. Watler

**NON-PARTY STEVE MCGONIGLE'S BRIEF IN SUPPORT OF MOTION TO QUASH TRIAL SUBPOENA, OR ALTERNATIVELY, LIMIT THE SCOPE OF EXAMINATION** – PAGE 11

4768205v.9 131015/00004